## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (DAYTON)

|                          |   |                                          |
|--------------------------|---|------------------------------------------|
| MOLLY H.,[1]             | : | Case No. 3:24-cv-00181                   |
|                          | : |                                          |
|    Plaintiff, | : | Magistrate Judge Caroline H. Gentry  |
|                          | : | (by full consent of the parties)         |
| vs.                      | : |                                          |
|                          | : |                                          |
| COMMISSIONER OF SOCIAL   | : |                                          |
| SECURITY,                | : |                                          |
|                          | : |                                          |
|    Defendant. | : |                                      |

---

## DECISION AND ORDER

---

Plaintiff filed an application for Disability Insurance Benefits (DIB) in March 2017 and for Supplemental Security Income (SSI) in May 2017. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. After the Appeals Council denied Plaintiff's request for review of that decision, Plaintiff filed an action with this Court.[2] The Court remanded the case to the Commissioner under Sentence Four of 42 U.S.C. § 405(g). The Appeals Council remanded the case pursuant to the District Court's order. The ALJ held another hearing and concluded that Plaintiff

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] Assigned to Magistrate Judge Norah McCann King, Case Number 3:20-cv-00323.

was not under a "disability" as defined in the Social Security Act, but that she became eligible for SSI on the day before she attained age sixty-five pursuant to 20 C.F.R. § 416.202(a)(1). The Appeals Council denied Plaintiff's request for review of that decision and Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court AFFIRMS the Commissioner's decision.

## I.    BACKGROUND

Plaintiff asserts that she has been under a disability since December 23, 2015. At that time, she was fifty-eight years old. Accordingly, Plaintiff was considered a "person of advanced age" under the Social Security regulations. *See* 20 C.F.R. §§ 404.1563(e), 416.963(e).[3] She subsequently changed age categories to a person "closely approaching retirement age." *Id.* Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-10 at PageID 1086-119), Plaintiff's Statement of Errors ("SE," Doc. No. 8), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 9), and Plaintiff's Reply Memorandum ("Reply," Doc. No.

---

[3] The remaining citations will identify only the pertinent DIB Regulations, as they are similar in all relevant respects to the corresponding SSI Regulations.

10). Rather than repeat these summaries, the Court will discuss the pertinent evidence in
its analysis below.

## II.    STANDARD OF REVIEW

The Social Security Administration provides DIB and SSI to individuals who are
under a "disability," among other eligibility requirements. *Bowen v. City of New York,*
476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term
"disability" means "the inability to do any substantial gainful activity by reason of any
medically determinable physical or mental impairment which . . . has lasted or can be
expected to last for a continuous period of not less than 12 months." 20 C.F.R.
§ 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries:
"[W]hether the ALJ applied the correct legal standards and whether the findings of the
ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d
399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of
Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
"Unless the ALJ has failed to apply the correct legal standards or has made findings of
fact unsupported by substantial evidence," this Court must affirm the ALJ's decision.
*Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may
not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of
credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing
administrative record and asks whether it contains 'sufficien[t] evidence' to support the

3

agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

III.    **FACTS**

A.    **The ALJ's Factual Findings**

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1:    Plaintiff has not engaged in substantial gainful activity since December 23, 2015, the alleged onset date.

Step 2:    She has the severe impairments of obesity, depression, an anxiety disorder, post-traumatic stress disorder (PTSD), and a personality disorder.

Step 3:    She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:    Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of medium work as defined in 20 C.F.R. § 404.1567(c), subject to the following limitations: "(1) no climbing of ladders, ropes, or scaffolds; (2) no work around hazards such as unprotected heights or dangerous machinery; (3) simple, routine, repetitive tasks; (4) occasional[,] superficial contact with co-workers and supervisors with "superficial contact" defined as being able to receive simple instructions, ask simple questions, and receive performance appraisals but as unable to engage in more complex social interactions such as persuading other people or resolving interpersonal conflicts; (5) no public contact; (6) no fast paced work; (7) no strict production quotas; and (8) very little, if any, change in the job duties or the work routine from one day to the next."

She is unable to perform any of her past relevant work.

Step 5:         Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.

(Decision, Doc. No. 7-10 at PageID 1092-111.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so was not entitled to DIB at any time through the date last insured of September 30, 2017. (*Id.* at PageID 1111.) Regarding Plaintiff's SSI application, the ALJ concluded that Plaintiff did not meet the definition of disability, but she nevertheless became eligible for SSI the day before she turned age sixty-five, pursuant to 20 C.F.R. § 416.202(a)(1).

## B.     State Agency Medical Consultants

State agency medical consultant David Knierim, M.D. completed a Disability Determination Explanation form in July 2017. (AR, Doc. No. 7-3 at PageID 94-102.) After summarizing the evidence reviewed, Dr. Knierim concluded that Plaintiff's physical impairments were not "severe." (*Id.* at PageID 94-95.) In the Symptoms Evaluation section of the form, Dr. Knierim stated that Plaintiff's alleged symptoms were "partially consistent" with the "total medical and non-medical evidence" of record. (*Id.* at PageID 97.) He explained:

> [Plaintiff] reports she passes out when her blood sugar drops. [Plaintiff's] [medically determinable impairments] could reasonably expected to produce the alleged [symptoms], but the intensity of the [symptoms] and their impact on functioning are not consistent [with] the totality of the evidence. Specifically, she has not sought medical [treatment] for this limitation. Statements regarding [symptoms] and limitations have been partially consistent [with] the objective records.

(*Id.*)

6

Mehr Siddiqui, M.D. reviewed the updated record and completed a Disability Determination Explanation form at the reconsideration level in October 2017. (AR, Doc. No. 7-3 at PageID 124-31.) After summarizing the evidence, Dr. Siddiqui concurred with Dr. Knierim's conclusions that Plaintiff's physical impairments were nonsevere and that Plaintiff's reported symptoms appeared partially consistent with the medical evidence. (*Id.* at PageID 124-25, 127.)

The ALJ found that Dr. Knierim's and Dr. Siddiqui's opinions were "mostly persuasive." (Decision, Doc. No. 7-10 at PageID 1107.) According to the ALJ, the consultants' opinions were "generally supported by and consistent with the record, which demonstrates unremarkable physical functioning prior to the established onset date despite her subjective complaints (Exhibits 1F-17F)." (*Id.*) The ALJ also explained:

> While [Plaintiff] has a BMI consistent with obesity, the remainder of her physical examinations prior to the established onset date are unremarkable, including with respect to gait and strength (Exhibits 1F-17F). She was able to exercise, including walking for miles, and it was incidentally noted that she lifted heavy objects on occasion (Exhibits 3E, 1F-17F).

(*Id.*) The ALJ concluded: "Therefore, the opinions of Drs. Knierim and Siddiqui are generally supported by and consistent with the record; however, in deference to her BMI, the undersigned considers her obesity to be "severe" with related physical restrictions included in the residual functional capacity." (*Id.*)

## C.    State Agency Psychological Consultants

State agency psychological consultant Janet Souder, Psy.D. completed a Disability Determination Explanation form in July 2017. (AR, Doc. No. 7-3 at PageID 95-99.) Dr. Souder found moderate impairment in the "B Criteria" areas of interacting with others

7

and adapting or managing oneself. (*Id.* at PageID 96.) She found mild impairment in

Plaintiff's ability to concentrate, persist, or maintain pace, and no impairment in the area

of understanding, remembering, or applying information. (*Id.*) In the area of sustained

concentration and persistence, Dr. Souder indicated moderate limitation in the ability to

"complete a normal workday and workweek without interruptions from psychologically[-

]based symptoms and to perform at a consistent pace without an unreasonable number

and length of rest periods." (*Id.* at PageID 98.) She opined that Plaintiff was capable of

completing "moderately complex tasks in a stable environment." (*Id.* at PageID 99.) As

for social functioning, Dr. Souder found moderate limitation in Plaintiff's ability to

interact appropriately with the general public and to accept instructions and respond

appropriately to criticism from supervisors. (*Id.*) Dr. Souder opined that Plaintiff was

limited to "superficial contact with others." (*Id.*) In the final area of adaptation, Dr.

Souder found moderate limitation in the ability to respond appropriately to changes in the

work setting, and limited Plaintiff to work "in which changes are explained." (*Id.*) In the

Additional Explanation section of the form, Dr. Souder wrote:

> [Samaritan Behavioral Health]-services closed [January 2016]; reportedly
> ongoing [mental health] treatment at Eastway.

> Presentation at [consultative evaluation] shows: fully oriented, verbal with
> recall of personal details and general information; able to focus and
> complete tasks of working memory, presented as depressed, restless with
> limited eye contact; remained polite, cooperative and reports compliance
> with med[ications]/[mental health] treatment.

(*Id.*)

8

Bruce Goldsmith, Ph.D. reviewed the updated record at the reconsideration level in October 2017. (AR, Doc. No. 7-3 at PageID 125-29.) He affirmed Dr. Souder's findings regarding the "B Criteria" areas of functioning (*id.* at PageID 126) but found no limitations in the area of sustained concentration and persistence. (*Id.* at PageID 128.) Regarding social interaction, Dr. Goldsmith affirmed Dr. Souder's findings of moderate impairment in Plaintiff's ability to interact appropriately with the general public and supervisors, but opined that Plaintiff was limited to "occasional and superficial interpersonal contact." (*Id.*) In the final area of adaptation, Dr. Goldsmith also found moderate impairment in Plaintiff's ability to respond appropriately to changes in the work setting, but opined that Plaintiff was limited to "routine tasks with infrequent changes." (*Id.* at PageID 128-29.)

The ALJ concluded that the State agency psychological consultants' findings were "partially persuasive." (AR, Doc. No. 7-10 at PageID 1107-08.) He reasoned that their opinions "when taken collectively with the most restrictive limitations, are somewhat supported by and consistent with the record, which demonstrates generally unremarkable findings on mental status examinations and subjective reports of improvement when adhering to treatment recommendations (Exhibits 1F-17F)." (*Id.* at PageID 1107.) The ALJ cited several normal mental status examination findings—including average eye contact, average attention span and concentration, average recent and remote memory, and normal insight—and noted that Plaintiff "demonstrated relatively good functioning" during the consultative psychological evaluation. (*Id.*) He reasoned that "[s]uch findings support an ability to perform work activity within the limitations opined." (*Id.*) The ALJ

also reasoned that Plaintiff's "[r]eported activities" were "consistent with an ability to

perform work activity within the limitations opined (Exhibits 3E, 1F-17F)." (*Id.*) But the

ALJ did not adopt verbatim the consultants' functional discussion, explaining as follows:

> Drs. Souder and Goldsmith use language that is vague and not vocationally
> defined, such as "superficial" interaction, and additional social restrictions
> were added to give [Plaintiff] the full benefit of the doubt. Additionally,
> both Drs. Souder and Goldsmith appear to have understated [Plaintiff's]
> limitations, and additional restrictions are warranted to give [Plaintiff] the
> full benefit of the doubt based on her subjective allegations. For example,
> the record supports moderate limitations in concentration, persistence, or
> pace based on subjective complaints, yet neither opinion addresses pace
> limitations in the mental residual functional capacity.

(*Id.* at PageID 1107-08.)

### D. Consultative Psychologist Larry James, Ph.D.

Larry James, Ph.D. performed a consultative psychological evaluation in July

2017. (AR, Doc. No. 7-7 at PageID 635-40.) In a narrative report, Dr. James documented

Plaintiff's reported subjective complaints and his mental status examination findings. (*Id.*

at PageID 635-39.) Dr. James concluded that his findings supported diagnoses of

borderline personality disorder and PTSD. (*Id.* at PageID 639-40.)

When asked to assess Plaintiff's mental abilities and limitations, Dr. James stated

that Plaintiff "had no difficulty following instructions or recalling remote or recent events

throughout the evaluation." (AR, Doc. No. 7-7 at PageID 640.) He opined that Plaintiff

would be "expected to be able to understand and apply very basic instructions in the work

setting." (*Id.*) Dr. James also stated that Plaintiff "did not demonstrate any limitations in

maintaining her attention or concentration throughout the evaluation." (*Id.*) Regarding

social functioning, Dr. James opined: "Given [her] reported history, it is unlikely that

10

[Plaintiff] would have difficulty responding appropriately to supervision and to co-workers in a work setting." (*Id.*) Finally, Dr. James opined that although Plaintiff "may be challenged by the workplace demands at times," she "does have the ability to manage anxiety, stress[,] and the demands of workplace challenges at this time." (*Id.*)

The ALJ found Dr. James' opinions to be "mostly persuasive," explaining that they were "mostly supported by and consistent with his examination, which demonstrated generally unremarkable functioning on examination (Exhibit 6F)." (Decision, Doc. No. 7-10 at PageID 1108.) The ALJ further explained that Dr. James' opinions were "generally supported by and consistent with the totality of the record, which demonstrates generally unremarkable findings on mental status examinations and subjective reports of improvement when adhering to treatment recommendations (Exhibits 1F-17F)." (*Id.*) The ALJ cited normal mental status examination findings of average eye contact, average attention span and concentration, average recent and remote memory, and normal insight. (*Id.*) The ALJ also explained that Plaintiff's "[r]eported activities" were "consistent with an ability to perform work activity within the limitations opined (Exhibits 3E, 1F-17F)." (*Id.*) However, the ALJ did not fully adopt Dr. James' functional discussion:

> [T]he undersigned notes that "very basic" is not vocationally defined, though it has been interpreted as being able to perform simple, routine, and repetitive tasks. Additionally, when giving [Plaintiff] the full benefit of the doubt with respect to her longstanding history of subjective complaints, Dr. James's opinion appears to understate [Plaintiff's] limitations, which support moderate limitations in the "paragraph B" criteria for reasons previously discussed, and further restrictions for the mental residual functional capacity are warranted.

(*Id.*)

11

IV.   **LAW AND ANALYSIS**

Plaintiff alleges three errors: 1) the ALJ "fail[ed] to properly evaluate the prior administrative medical findings and medical opinions for supportability and consistency" pursuant to the applicable Social Security regulations; 2) the ALJ's RFC "is unsupported and lacks foundation in creditable medical opinion evidence"; and 3) the ALJ "conflat[ed] [Plaintiff's] improvement in the context of mental health treatment with an ability to perform full-time work activity on a sustained basis." (SE, Doc. No. 8 at PageID 1874.) For the reasons discussed below, the Court concludes that Plaintiff's assertions are not well-taken and therefore affirms the ALJ's decision.

A.   **The ALJ Did Not Reversibly Err In His Analysis Of The Medical Opinion Evidence.**

1.   **Applicable law**

ALJs are required to analyze the persuasiveness of "all of the medical opinions" in the record. 20 C.F.R. § 404.1520c. A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [her] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed her claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any

12

medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Therefore, an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.); *accord Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar. 20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ's consistency analysis therefore must compare the medical opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v.*

*Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023).

The distinction between the supportability and consistency factors is relatively clear when the opinion is from a treating provider. Providers commonly rely on the records in their possession—including progress notes, test results, statements from the claimant, and opinions from other medical providers—to support their medical opinions. An ALJ can readily identify a provider's records that purportedly support their opinion and use them to analyze supportability. Then, when analyzing consistency, the ALJ can readily compare the provider's opinion to opinions and evidence from ***other*** providers. Because each factor (supportability and consistency) considers different evidence, the reviewing court can easily determine whether the ALJ has addressed each factor.

It can be more challenging to distinguish between supportability and consistency when the opinion is from a state agency consultant. Because they do not have their own treatment records, consultants must review and rely upon documents in the administrative record to support their opinions. The ALJ will, however, consider documents from the same administrative record when analyzing both supportability and consistency. If the consultant's report clearly identifies the documents relied upon to support their opinions, then the ALJ can conduct a supportability analysis that is based on those documents. But if the consultant's report does not clearly identify the documents that support their opinions, then the ALJ's ability to conduct separate supportability and consistency analyses will be limited. *See Kenneth B. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00672-CHL, 2024 WL 1199025, at *6-7 (W.D. Ky. Mar. 19, 2024) (citing *Tyrone H. v. Comm'r*

*of Soc. Sec.*, No. 2:22-cv-3652, 2023 WL 2623571, at *6 (S.D. Ohio Mar. 24, 2023) (Jolson, M.J.)).

Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain *how* he or she considered them."[4] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20 C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id*.

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13,

---

[4] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

> ### 2. The ALJ did not reversibly err in evaluating the state agency medical and psychological consultants' findings.

Plaintiff argues that the ALJ improperly evaluated the prior administrative findings of the state agency medical and psychological consultants. Specifically, Plaintiff contends that the ALJ "essentially merely repeated their opinions and then found them 'generally supported by and consistent with the record'—which conflates the supportability factor with the consistency factor." (SE, Doc. No. 8 at PageID 1881 (citing Decision, Doc. No. 7-10 at PageID 1107).) Plaintiff argues:

> For the ALJ to have adequately discussed the supportability of these opinions, the ALJ needed to evaluate what these sources said they each based their opinions on—not simply how the opinions compared to the record evidence as a whole, which only goes to the consistency of the medical source opinions.

(*Id.*) These arguments are not well-taken.

The regulation that requires ALJs to explain their analysis of the supportability and consistency factors does not mandate that such explanations include a specific level of detail. 20 C.F.R. § 404.1520c. Instead, "the appropriate level of articulation will

16

necessarily depend on the unique circumstances of each claim." Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5854 (Jan. 18, 2017). Here, the undersigned finds that the ALJ adequately explained his consideration of the supportability and consistency factors when he evaluated the medical consultants' findings.

As stated above, the consultants found that Plaintiff's physical impairments were nonsevere and therefore opined that Plaintiff had no physical limitations. (AR, Doc. No. 7-3 at PageID 94-102, 124-31.) The ALJ found these opinions to be "mostly persuasive" because they were "generally supported by and consistent with the record, which demonstrate[d] unremarkable physical functioning prior to the established onset date despite [Plaintiff's] subjective complaints (Exhibits 1F-17F)." (Decision, Doc. No. 7-10 at PageID 1107.) The ALJ also provided other reasons that addressed supportability and consistency. For example, the ALJ acknowledged that Plaintiff "has a BMI consistent with obesity" but cited physical examinations—including examinations documented in records that the consultants did not review—that were "unremarkable, including with respect to gait and strength (Exhibits 1F-17F)." (Decision, Doc. No. 7-10 at PageID 1107.) The ALJ also explained that Plaintiff "was able to exercise, including walking for miles," and that "she lifted heavy objects on occasion (Exhibits 3E, 1F-17F)." (*Id.*) The ALJ nevertheless found that Plaintiff was ***more*** limited than the consultants suggested, by relying on Plaintiff's BMI to find that Plaintiff's obesity is severe and including physical limitations in the RFC. (*Id.*) The ALJ's analysis complied with the applicable regulations and his findings are supported by substantial evidence.

Similarly, the ALJ adequately explained his consideration of the supportability and consistency factors when he evaluated the psychological consultants' findings. The ALJ explained that he adopted several of the consultants' limitations because they were "somewhat supported by and consistent with the record, which demonstrates generally unremarkable findings on mental status examinations and subjective reports of improvement when adhering to treatment recommendations (Exhibits 1F-17F)." (Decision, Doc. No. 7-10 at PageID 1107.) The ALJ cited specific examples—including from examinations documented in records that the consultants did not review—such as average eye contact, attention span, concentration, and recent and remote memory. (*Id.*) The ALJ also reasoned that Plaintiff's "[r]eported activities" were generally consistent with the consultants' opined limitations. (*Id.*)

The ALJ found other portions of the consultants' opinions to be less persuasive and provided several reasons that addressed the supportability and consistency factors. For example, he explained that some of the language used by the consultants, such as the term "superficial" interaction, was "vague and not vocationally defined." (Decision, Doc. No. 7-10 at PageID 1107.) However, the ALJ included additional social restrictions in the RFC and defined the term "superficial."[5] (*Id.*) The ALJ also found that the psychological consultants "appear[ed] to have understated [Plaintiff's] limitations" and that additional RFC limitations were warranted to further account for her allegations. (*Id.*) The ALJ cited

---

[5] The ALJ limited Plaintiff to occasional and superficial contact with coworkers and supervisors, and he defined "superficial contact" as "being able to receive simple instructions, ask simple questions, and receive performance appraisals but as unable to engage in more complex social interactions such as persuading other people or resolving interpersonal conflicts." (Decision, Doc. No. 7-10 at PageID 1099.) The ALJ further limited Plaintiff to no public contact. (*Id.*)

18

Plaintiff's moderate limitations in the "B criteria" area of concentration, persistence, or pace to explain why he included pace limitations in the RFC. (*Id.*) The Court finds that the ALJ's analysis of the psychological consultants' opinions complied with the applicable regulations and his findings are supported by substantial evidence.

Plaintiff argues that "the ALJ's failure to articulate the persuasiveness of the required factors warrants remand, because 'without fuller explanation, this court cannot engage in meaningful review of the ALJ's decision.'" (SE, Doc. No. 8 at PageID 1885 (citing *Reed v. Comm'r of Soc. Sec.*, No. 3:20-CV-02611-CEH, 2021 WL 5908381, at *6 (N.D. Ohio Dec. 14, 2021); *Jacob B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-617, 2022 WL 130761, at *8 (S.D. Ohio Jan. 14, 2022) (Litkovitz, M.J.)).) Plaintiff further asserts that "'[c]onsistency and supportability are separate inquiries,' and simply discussing one does not satisfy the requirement that an ALJ also evaluate, and articulate, the other." (Reply, Doc. No. 10 at PageID 1915-16 (citing *Amy B. v. Comm'r of Soc. Sec.*, No. 1:22-CV-00486-TPK, 2023 WL 2445306, at *4 (S.D. Ohio Mar. 10, 2023) (Kemp, M.J.)).)

These assertions are not well-taken. As Plaintiff acknowledges, the Sixth Circuit "has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement." (SE, Doc. No. 8 at PageID 1882 (citing *Gavre v. Comm'r of Soc. Sec.*, No. 3:20-CV-00551-DJH-CHL, 2022 WL 1134293, at *4 (W.D. Ky. Jan. 3, 2022)).) Because the ALJ provided detailed reasons and record citations when analyzing the opinions of the state agency consultants, the Court finds that he satisfied the mandatory articulation requirement. Notably, although Plaintiff argues that the ALJ impermissibly conflated the supportability and consistency factors, it is understandably

difficult to analyze these factors separately when considering the opinions of state agency consultants who do not have their own records (as explained above).

For this reason, the Court finds that Plaintiff's cited cases are distinguishable. Treating sources provided the medical opinions at issue in *Amy B.*, 2023 WL 2445306, at *3, and *Jacob B.*, 2022 WL 130761, at *3, and a consultative examiner provided the medical opinion at issue in *Reed*, 2021 WL 5908381, at *5. Therefore, in all three cases, the distinction between the supportability and consistency factors was relatively clear. It was error not to analyze these medical sources' own records in connection with the supportability factor, and to analyzing the records of other medical sources in connection with the consistency factor. *Amy B.*, 2023 WL 2445306, at *4-5; *Reed*, 2021 WL 5908381, at *6; *Jacob B.*, 2022 WL 130761, at *8.

Here, by contrast, because the consultants did not have their own records, the ALJ's analyses were understandably not distinct. Additionally, Plaintiff has not pointed to specific evidence the ALJ failed to consider with respect to either supportability or consistency. For all of these reasons, the Court concludes that the ALJ complied with applicable regulations when he evaluated the persuasiveness of the state agency consultants' findings and, further, that his analyses are supported by substantial evidence.

### 3. The ALJ did not reversibly err in evaluating the opinions of consultative psychologist Dr. James.

Plaintiff's assertion that the ALJ did not properly evaluate Dr. James' opinions is also not well-taken. The ALJ complied with applicable regulations when he found the opinions of Dr. James to be "mostly persuasive." (Decision, Doc. No. 7-10 at PageID

1108.) The ALJ's explanation adequately addresses the supportability and consistency factors, and his conclusions are supported by substantial evidence.

The ALJ addressed the supportability factor when he found that Dr. James' opinions were "mostly supported by and consistent with [Dr. James'] examination, which demonstrated generally unremarkable functioning on examination (Exhibit 6F)."[6] (Decision, Doc. No. 7-10 at PageID 1108.) The ALJ addressed the consistency factor when he compared Dr. James' opinions to the medical and other evidence in the record. (*Id.*) For example, the ALJ stated that the "totality of the record . . . demonstrate[d] generally unremarkable findings on mental status examinations and subjective reports of improvement when adhering to treatment recommendations (Exhibits 1F-17F)." (*Id.*) The ALJ cited specific examples, such as average eye contact, attention span, concentration, and recent and remote memory. (*Id.*) The ALJ also explained that Plaintiff's "[r]eported activities" were consistent with Dr. James' opinions. (*Id.*)

The ALJ also addressed Dr. James' opinion that Plaintiff could understand and apply "very basic" instructions. (Decision, Doc. No. 7-10 at PageID 1108 (citing AR, Doc. No. 7-7 at PageID 640).) Although the ALJ explained that he discounted this limitation because it was "not vocationally defined," he nevertheless limited Plaintiff to performing simple, routine, and repetitive tasks. (*Id.*) The ALJ further explained that Dr.

---

[6] Although the ALJ used the terms "supported" and "consistent" in the same sentence, the Court finds that this sentence only addressed the supportability factor because it referred to Dr. James' examination. *See* 20 C.F.R. § 404.1520c(c)(1) (the supportability factor requires consideration of the "objective medical evidence and supporting explanations **presented by a medical source** ….") (emphasis added).

James' opinions "appear[ed] to understate [Plaintiff's] limitations" and so he included additional limitations in the RFC. (*Id.*)

For all of these reasons, the ALJ adequately addressed the supportability and consistency of Dr. James' opinions as required by 20 C.F.R. § 1520c(b)(2), and his conclusions are supported by substantial evidence.

### B.     The ALJ's RFC Does Not Lack "Foundation In Creditable Opinion Evidence."

#### 1.     Applicable law

It is well-established that determination of the residual functional capacity (RFC) is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity'"). A claimant's RFC describes the most she can do in a work setting despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of her limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

The ALJ is required to consider evidence from the entire relevant time period when formulating the RFC. *E.g., White v. Comm'r of Soc. Sec.*, No. 3:21-cv-762, 2022

U.S. Dist. LEXIS 140674, *47 (N.D. Ohio June 1, 2022) (Knapp, M.J.), *affirmed by* 2022

U.S. Dist. LEXIS 139178 (N.D. Ohio Aug. 4, 2022) (Knepp, D.J.). As Magistrate Judge

Knapp explained, "[w]hile the substantial evidence standard is deferential, the Sixth

Circuit has emphasized that the chief limitation to that deference 'is the requirement that

all determinations be made based upon the record in its entirety.'" 2022 U.S. Dist. LEXIS

140674, *47 (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007)).

Thus, an ALJ should not "unduly concentrate on one single aspect of the claimant's

history." *Rogers*, 486 F.3d at 249.

Notably, "[t]he responsibility for determining a claimant's [RFC] rests with the

ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009)

(citing 20 C.F.R. § 404.1546(c)). An ALJ is required to consider medical opinion

evidence when determining the RFC, but he is not required to adopt them or adopt any

such findings verbatim. *Poe*, 342 F. App'x at 156-57 (6th Cir. 2009). In addition, "[t]he

determination of a plaintiff's RFC is entirely within the purview of the ALJ, and this

Court will defer to that finding even if there is substantial evidence in the record that

would have supported an opposite conclusion." *Rieder v. Comm'r of Soc. Sec.*, No. 2:20-

CV-05858, 2021 WL 5881784, at *5 (S.D. Ohio Dec. 13, 2021) (internal quotations and

citation omitted) (Preston Deavers, M.J.).

Nevertheless, as noted above, an ALJ is required "to show his or her work." *Scott

K.*, 2022 U.S. Dist. LEXIS 175673, at *11. Thus, "[t]his Court cannot uphold an ALJ's

decision, even if there if there is enough evidence in the record to support the decision,

where the reasons given by the trier of fact do not build an accurate and logical bridge

between the evidence and the result." *Fleischer*, 774 F. Supp. 2d at 877 (cleaned up).

(internal quotations and citation omitted).

### 2. The ALJ's RFC is supported by substantial evidence.

Based upon the analysis set forth above, the Court finds that the ALJ provided

reasonable explanations for why and how he weighed the medical opinions, and his

conclusions are supported by substantial evidence.

Plaintiff cites several cases to support the argument that the ALJ erroneously made

"a finding of work-related limitations based on no medical source opinion, or an outdated

source opinion that did not include consideration of a critical body of objective medical

evidence." (SE, Doc. No. 8 at PageID 1886-87 (citing *Kizys v. Comm'r of Soc. Sec.*, No.

3:10 CV 25, 2011 WL 5024866, at *1-3 (N.D. Ohio Oct. 21, 2011); *Colaner v. Comm'r

of Soc. Sec.*, No. 12-cv-00716, 2013 WL 5487037, at *4 (S.D. Ohio Sept. 30, 2013)

(Marbley, D.J.); *Banks v. Comm'r of Soc. Sec.*, No. 3:19-cv-307, 2020 WL 5757173, at

*3 (S.D. Ohio Sept. 28, 2020) (Newman, D.J.); *Anita Lynn H.-J. v. Comm'r of Soc. Sec.

Admin.*, No. 3:21-cv-025, 2022 WL 10686665, at *5-6 (S.D. Ohio June 23, 2022)

(Silvain, M.J.)).) Plaintiff contends that this case "involves a critical body of medical

evidence that was not reviewed by any creditable medical source, including six <u>years</u> of

medical records." (SE, Doc. No. 8 at PageID 1888 (emphasis in original).) In particular,

Plaintiff asserts that this is problematic because this Court previously remanded the case

"due to the ALJ's failure to properly consider Plaintiff's morbid obesity." (*Id.*)

However, the ALJ was ***not*** required to obtain an updated medical opinion to

evaluate the new medical evidence. Instead, the ALJ was entitled to rely on the opinions

of the state agency medical and psychological consultants, even if the record contained later-submitted evidence, as long as the ALJ considered the later records and accounted for any relevant differences in them. *E.g., McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) ("McGrew also argues that the ALJ improperly relied on the state agency physicians' opinions because they were out of date and did not account for changes in her medical condition. It is clear from the ALJ's decision, however, that he considered the medical examinations that occurred after [the state agency medical consultant's] assessment, . . . including [a treating neurologist's] contrary assessment, and took into account any relevant changes in McGrew's condition."); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2010) ("Even if [the state agency medical consultant's] RFC was completed without knowledge of these [medical] issues, however, the record reflects that the ALJ considered them."); *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)) (clarifying that the court's prior holding in *Blakley* "requir[es] only that before an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give 'some indication' that he 'at least considered' that the source did not review the entire record.").

Here, the ALJ properly considered the later-submitted evidence and accounted for relevant changes in Plaintiff's medical condition, including as to Plaintiff's obesity. In the RFC analysis, the ALJ acknowledged that Plaintiff reported a height of 60 inches and a weight of 184 pounds when she initially applied for benefits in March 2017. (Decision, Doc. No. 7-10 at PageID 1100.) He acknowledged that Plaintiff reported an increased

weight of 210 pounds at the April 2019 hearing (approximately two years after the most

recent state agency medical consultant's assessment), and of 212 pounds at the January

2024 hearing (just over five years after the most recent state agency medical consultant's

assessment). (*Id.* at PageID 1101.) Then, the ALJ addressed Plaintiff's obesity in his

summary of the medical evidence:

> Throughout the period under review, [Plaintiff] presented with a body mass
> index consistent with obesity (Exhibits 1F-17F). While her obesity may
> contribute to her non-medically determinable impairments, such as her pain
> complaints, none of her treatment notes reflect any significant
> abnormalities in strength or gait that would prevent her from performing
> medium work activity (Exhibits 1F-17F). Treatment notes from prior to the
> established onset date indicate that she exercised, including walking, and
> there were times where it was incidentally noted that she was able to do
> heavy lifting (Exhibits 1F-17F). Therefore, the reduced range of medium
> work in the above residual functional capacity, which includes appropriate
> restrictions to give [Plaintiff] the full benefit of the doubt with respect to
> her obesity and related subjective complaints, fully addresses [Plaintiff's]
> physical impairments.

(*Id.* at PageID 1102.)

The ALJ also addressed Plaintiff's obesity when he evaluated the opinions of the

state agency medical consultants. The ALJ cited evidence—including evidence submitted

after the dates of the consultants' assessments—and stated that although Plaintiff's BMI

indicated obesity, "the remainder of her physical examinations prior to the established

onset date are unremarkable, including with respect to gait and strength (Exhibits 1F-

17F)." (Decision, Doc. No. 7-10 at PageID 1107.) The ALJ also noted: "She was able to

exercise, including walking for miles, and it was incidentally noted that she lifted heavy

objects on occasion (Exhibits 3E, 1F-17F)." (*Id.*) The ALJ explained that the consultants'

opinions were "generally supported by and consistent with the record," but accounted for

Plaintiff's obesity by finding it to be a severe impairment and limiting her to the reduced range of medium work in the RFC. (*Id.*)

To the extent that Plaintiff contends that the ALJ did not follow this Court's prior order when analyzing Plaintiff's obesity, that assertion is not well-taken. Magistrate Judge McCann King remanded the prior decision "due to the ALJ's failure to properly consider Plaintiff's morbid obesity." (SE, Doc. No. 8 at PageID 1888 (citing AR, Doc. No. 7-11 at PageID 1177-78).) At that point, she noted that the ALJ "made no mention" of Plaintiff's obesity and found the ALJ erred by failing to determine whether Plaintiff's obesity was a severe impairment at Step Two. (AR, Doc. No. 7-11 at PageID 1177.) She did not order, much less recommend, that the ALJ obtain an updated medical opinion upon remand. (*Id.* at PageID 1177-78.) In the decision at issue here, the ALJ thoroughly evaluated Plaintiff's obesity pursuant to the applicable legal requirements, found it to be a severe impairment at Step Two, and accounted for it in the RFC. The ALJ complied with this Court's remand order and his conclusions are supported by substantial evidence.

The Court reaches the same conclusions with respect to the ALJ's consideration of Plaintiff's mental impairments. The ALJ provided a detailed summary of medical records documenting Plaintiff's treatment for her mental impairments, including records dated after the state agency psychological consultants provided their assessments. (Decision, Doc. No. 7-10 at PageID 1104-06.) In his analysis of the consultants' opinions, the ALJ cited evidence—including evidence submitted after the consultants' assessments—and found the consultants' opinions to be "somewhat supported by and consistent with the record, which demonstrates generally unremarkable findings on mental status

27

examinations and subjective reports of improvement when adhering to treatment recommendations (Exhibits 1F-17F)." (*Id.* at PageID 1107.) The ALJ cited and discussed later-submitted evidence when he stated: "For example, [Plaintiff] generally presents with average eye contact (e.g. Exhibit 14F/110). Attention span and concentration were average, as were recent and remote memory (e.g. Exhibit 14F/110-111). She was insightful of her condition (e.g. Exhibit 14F/110)." (*Id.*) The ALJ also explained that he nevertheless included additional limitations in the RFC to account for the consultants' vague social restrictions and because "both Drs. Souder and Goldsmith appear to have understated [Plaintiff's] limitations." (*Id.* at PageID 1107-08.)

In sum, the Court finds that the ALJ considered later-submitted evidence that the consultants did not review and accounted for relevant changes when he formulated the RFC. The ALJ's evaluation of the consultants' findings is consistent with the applicable legal requirements, supported by substantial evidence, and does not warrant reversal.

### C. The ALJ Did Not Conflate Plaintiff's Mental Health Improvement With An Ability To Perform Full-Time Work On A Sustained Basis.

#### 1. Applicable law

The ALJ's evaluation of Plaintiff's mental health symptoms was governed by 20 C.F.R. § 404.1529 and Social Security Ruling (SSR) 16-3p, which mandates a two-step process for evaluating an individual's symptoms. SSR 16-3p, 2017 WL 5180304, *3 (S.S.A. revised and republished Oct. 25, 2017).[7]

---

[7] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

At the first step, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. The ALJ must base this determination upon objective medical evidence in the form of medical signs or laboratory findings. *Id*. Medical signs are "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms." *Id*. The ALJ will not, however, consider whether the objective medical evidence supports the alleged severity of the individual's symptoms. *Id*.

At the second step, the ALJ must "evaluate the intensity and persistence of an individual's symptoms . . . and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. Among other things, the ALJ must decide whether the alleged symptoms and accompanying limitations are consistent with the evidence in the record. SSR 16-3p at *8. The Social Security Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id*. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *9. Further, when determining whether an individual's statements are consistent with her symptoms, the ALJ will keep in mind that the individual's statements

29

may themselves be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id*. at *8-9.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at *7-8. The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id*. However, the ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

2.    **The ALJ did not reversibly err in evaluating Plaintiff's symptom severity.**

Plaintiff argues that "the ALJ reversibly erred by selectively focusing on [Plaintiff's] alleged improvement during treatment and in conflating her improvement with an ability to perform full-time work activity on a sustained basis." (SE, Doc. No. 8 at PageID 1890.) Plaintiff cited no specific evidence to show she is more limited than the ALJ's findings. Instead, Plaintiff contends the ALJ should not have relied on reports of Plaintiff's improvement because "the nature of mental health impairments is fluctuating, and any improvement experienced by Plaintiff may have been fleeting." (*Id.* at PageID 1891.) Plaintiff further asserts: "While [Plaintiff] may have shown some intermittent improvement with fluctuating symptoms, the record does not establish that [Plaintiff] had improved to the point of being able to sustain employment on a full-time basis." (*Id.* at PageID 1892.) According to Plaintiff, "the ALJ's repeated reliance on selected treatment notes indicating some improvement within the context of mental health treatment tainted his symptom severity analysis and prejudiced [Plaintiff]." (*Id.*)

These arguments are not well-taken because the ALJ complied with the two-step process required by 20 C.F.R. § 404.1529 and SSR 16-3p. The ALJ found that Plaintiff has medically determinable impairments (severe impairments of obesity, depression, an anxiety disorder, PTSD, and a personality disorder, and nonsevere impairments of diverticulitis, gastroesophageal reflux disease, cataracts, and hypertension) that could reasonably cause some of the alleged symptoms. (Decision, Doc. No. 7-10 at PageID 1093-102.) The ALJ then considered the evidence in the record and found that Plaintiff's

31

statements about the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record. (*Id.* at PageID 1100-06.) Because the ALJ applied the correct legal standards and his conclusions are supported by substantial evidence, the Court must affirm the ALJ's decision even if substantial evidence could have supported a different conclusion.

The ALJ first summarized Plaintiff's subjective complaints related to her mental impairments. The ALJ noted that Plaintiff complained of symptoms such as anxiety, panic attacks around large groups of people and while driving, suicidal ideation, crying spells, difficulty getting along with others, irritability, decreased concentration and memory, difficulty following written instructions, difficulty finishing movies and television shows, and difficulty handling stress and changes in routine. (Decision, Doc. No. 7-10 at PageID 1097-1102.)

Next, the ALJ discussed medical records that documented Plaintiff's treatment for her mental impairments. (Decision, Doc. No. 7-10 at PageID 1102-06.) The ALJ noted Plaintiff's statements to a medical provider prior to the alleged disability onset date that her symptoms included depression, anxiety, vague suicidal ideation, intrusive thoughts, and panic attacks that occurred several times per week. (*Id.* at PageID 1102-03.) The ALJ noted that there were no records of mental health treatment for a little over a year after the alleged onset date. When Plaintiff resumed treatment, she reported for a few months that she experienced symptoms of anger, depression, anxiety, panic attacks, difficulty sleeping, and lack of motivation. (*Id.* at PageID 1103-04.)

The ALJ acknowledged many of the abnormal findings that providers documented during this time, including depressed moods and affect, lability, irritability, restlessness, limited eye contact, racing thoughts, a need to be redirected, and some abnormalities in memory, concentration, and insight. (Decision, Doc. No. 7-10 at PageID 1103-05.) The ALJ compared this evidence to relatively normal findings such as euthymic moods, a full affect, average demeanor and activity, average to excellent hygiene, average eye contact, cooperative behavior, normal speech, goal-directed thought processes, no impairment of cognition, and no hallucinations, delusions, or suicidal or homicidal ideation. (*Id.*)

The ALJ acknowledged that Plaintiff was hospitalized overnight in September 2017 for an intentional overdose of naproxen after she had an argument with her fiancé. (Decision, Doc. No. 7-10 at PageID 1105.) The ALJ stated that although Plaintiff reported problems with depression and anxiety, she denied thoughts of harming herself or others. (*Id.*) The ALJ noted that the records showed no further mental health treatment until September 2018, although Plaintiff reported that she continued to take medication prescribed by her primary care provider. (*Id.*)

The ALJ compared this evidence to later records documenting numerous reports by Plaintiff to her providers that her symptoms had improved:

- In November 2018, Plaintiff reported that her anxiety was improved, that she was "not on edge and did not feel so anxious about everything," and that her mood had been "'even' for the majority of times." (Decision, Doc. No. 7-10 at PageID 1105 (citing AR, Doc. No. 7-8 at PageID 969).)

- Plaintiff stated in January 2019 that she was "doing well with only occasional mixed symptoms" and that her mood was "largely

33

euthymic." (*Id.* (citing AR, Doc. No. 7-8 at PageID 973).)

- Plaintiff reported an improved mood in March 2019 and told her primary care provider that she was feeling "much better." (*Id.* (citing AR, Doc. No. 7-15 at PageID 1665).)

- In December 2019, Plaintiff told her psychiatrist that her mood was "good and even," that she had "no special troubles with anxiety," and that she was "pleased with her medications and wished to continue them without change." (*Id.* (citing AR, Doc. No. 7-15 at PageID 1443).)

- Plaintiff told her primary care provider in January 2020 that she was feeling "much better," and denied depression and anxiety. (*Id.* (citing AR, Doc. No. 7-15 at PageID 1805).)

- During an April 2020 psychiatric visit, Plaintiff reported she was "doing well with a steady mood, clear thinking, and no neurovegetative symptoms," as well as "no significant anxiety." (*Id.* at PageID 1106 (citing AR, Doc. No. 7-15 at PageID 1360).)

- In August 2020, Plaintiff stated she had "no unmanageable anxiety" and described a euthymic mood, despite reporting that she was grieving the recent death of her sister. (*Id.* (citing AR, Doc. No. 7-15 at PageID 1387).) She also said she "believed her medications were serving her needs well." (*Id.*)

- Although Plaintiff told her primary care provider in March 2021 that she was "stressed out due to the passing of a close friend," she told her psychiatrist later that month that her anxiety was manageable. (*Id.* (citing AR, Doc. No. 7-15 at PageID 1337, 1604).) Plaintiff also told a mental health provider in March 2021 that she still "struggled to be around groups of other people" but her depressive symptoms were "'pretty good' overall." (*Id.* (citing AR, Doc. No. 7-15 at PageID 1346).)

- In October 2021, Plaintiff told her psychiatrist that she was "doing 'pretty good,'" . . . [h]er anxiety was manageable, and she believed her medications were serving her needs." (*Id.* (citing AR, Doc. No. 7-15 at PageID 1416).)

- Plaintiff reported in June 2022 that although her anxiety was "more frequent and intense," it remained "manageable." (*Id.* (citing AR, Doc. No. 7-15 at PageID 1369).)

- Plaintiff told her psychiatrist in September 2022 that her anxiety "remained manageable," despite increased symptoms related to her spouse's recent surgery and complications. (*Id.* (citing AR, Doc. No. 7-15 at PageID 1407).)

- In October 2022, Plaintiff told her primary care provider that she was "stable from a mental health perspective." (*Id.* (citing AR, Doc. No. 7-15 at PageID 1571).)

The ALJ acknowledged that records dated after September 2018 showed some depressed, anxious, irritable, and labile moods, although only occasionally. (Decision, Doc. No., 7-10 at PageID 1105-06.) The ALJ compared this evidence to other normal mental status findings that were documented during that time, including euthymic and/or good moods, a full affect, clear and logical or rational thoughts, appropriately-paced and goal-directed thought processes, average eye contact, average speech and language, intact associations, good grooming, excellent hygiene, average attention and concentration, average recent and remote memory, adequate insight, and no hallucinations, delusions, obsessions, or suicidal or homicidal ideation. (*Id.*) The ALJ also noted that several mental status examinations showed no abnormalities. (*Id.*)

The ALJ concluded that the balance of the evidence did not support Plaintiff's allegations of symptom severity. (Decision, Doc. No. 7-10 at PageID 1102-06.) However, the ALJ did not conclude that Plaintiff's symptoms had improved so much because of her mental health treatment that she could perform unrestricted full-time work. Rather, the ALJ found that the record supported moderate limitations in each of the four "B criteria"

areas of functioning. (Decision, Doc. No. 7-10 at PageID 1097-98.) The ALJ accounted for these limitations by including a number of mental restrictions in the RFC. (*Id.* at PageID 1099.) The Court finds that the ALJ's conclusions are supported by substantial evidence and therefore must be affirmed.

**IT IS THEREFORE ORDERED THAT**:

1.      Plaintiff's Statement of Errors (Doc. No. 8) is OVERRULED;

2.      The Court AFFIRMS the Commissioner's non-disability determination; and

3.      The case is terminated on the Court's docket.

> *s/ Caroline H. Gentry*
> Caroline H. Gentry
> United States Magistrate Judge